CALEB LAMSON *vs.* HENRY PATCH.

Plucking a handful of half grown grass and delivering it to a purchaser in the field, upon a sale of the grass with an agreement that the vendor shall cut it at the proper time, is not a constructive delivery of the hay as a chattel, which will pass a title to it, as against third persons.

TORT for the conversion of hay.

At the trial in the superior court, before *Brigham*, J., it appeared that the plaintiff, being the owner of a farm, executed a lease thereof to Nathan M. Withington for one year from November 1, 1859. Before the execution of this lease, it was

orally agreed that Withington might use, during his occupation of the leased premises, a quantity of hay which was then upon the premises, and that an equal quantity of hay, of the next season, should be left by him at the termination of his tenancy, or the deficiency accounted for. On the 1st of June 1860, Withington executed to Daniel Lunt a bill of sale of " all the English grass standing upon land now occupied by me under lease from Caleb Lamson, being about four tons, the same to be cut by said Lunt at his own expense," and at the same time went with Lunt upon the field where the grass was growing, and plucked a handful of the grass, which was then about six inches high, and gave it to Lunt, saying that the grass there growing was to be Lunt's, and at the same time agreeing for compensation to cut and cure it at a proper time, and Lunt agreed to pay Withington for so doing, and to take away the hay, when made, from the field. On the 18th of June 1860, the plaintiff served upon Withington a notice to quit for non-payment of rent, and took possession of the farm on or about the 10th of July, raked about one ton of hay which had been cut by Withington, and cut the rest of the grass, and put the whole crop, both that which had been cut by Withington and that which was cut by himself, into the barn. By authority of Lunt, Withington sold from the barn a portion of the hay to the defendant; and the plaintiff now seeks to recover the value of it.

The judge ruled that upon these facts the plaintiff was not entitled to recover, and the jury returned a verdict for the defendant; and the judge reported the case for the determination of this court.

*E. W. Kimball,* for the plaintiff.

*S. B. Ives, Jr.,* for the defendant, cited *Dockham* v. *Parker,* 9 Greenl. 137 ; *Hurd* v. *Darling,* 14 Verm. 214 ; S. C. 16 Verm. 377 ; *Empson* v. *Soden,* 4 B. & Ad. 655 ; *Miller* v. *Baker,* 1 Met. 27, 32 ; *Jewett* v. *Warren,* 12 Mass. 300 ; *Boynton* v. *Veazie,* 24 Maine, 286.

HOAR, J. The plaintiff was in the actual possession of the hay when it was taken by the defendant. He had taken lawful possession of the farm, terminated the tenancy of Withington,

harvested the hay and put it into the barn, as his own prop-erty. His title to maintain the action is therefore clear, unless Lunt, under whom the defendant claims, had acquired a better title.

If the title of Lunt was a mere executory contract, the plaintiff had the same, and one earlier in date. Withington had agreed to leave all the hay cut on the farm for his use, and the consid-eration for this agreement had been paid. But there had been no delivery of the hay under this contract, and if there had been a sale and delivery of the grass to Lunt, his title became perfect.

The question upon which the case turns, therefore, is, whether plucking a handful of growing grass, and delivering it to a pur-chaser in the field, as in part execution of a contract of sale of the whole crop, is a good symbolical delivery of the whole? We are all of opinion that it is not. The time when this act was done was the first day of June. The grass was but six inches high. It was therefore not fit to cut, and but partially grown. The agreement was that Withington should cut and cure it " at a proper time;" and this time does not seem to have arrived until several weeks afterward, and when Withington's estate in the land had terminated.

It is said that the symbolical delivery was all which the na-ture of the case would admit; and several cases have been cited in argument, in which such a delivery has been held to be sufficient. But these are all cases of actual chattels, as logs in a boom, or in a river, and the like; where the thing to be de-livered was capable of possession by one party as much as by the other; and where, by the intent and understanding of the parties, the delivery made was intended to transfer the imme-diate unqualified dominion of the property to the vendee. But in this case the grass was not fit to cut, and was not intended to be cut until it should have grown. There is nothing in the case to show that it was the product of the labor and skill of the tenant. As was said by Metcalf, J., in *Stearns* v. *Washburn*, 7 Gray, 188, " until severed, the grass was not personalty, not goods or chattels, but was part of the realty." And see the cases there cited; and *Empson* v. *Soden*, 4 B. & Ad. 655.

There seems no difference in principle between the effect of such a delivery as was made by Withington to Lunt, and a delivery of a handful of the roots of the grass in the autumn or winter, by a tenant for years, as a partial delivery on a sale of the successive crops for any number of years to which his tenancy might extend.

As the grass was not sowed by the tenant, it is conceded at the bar that the doctrine of emblements has no application. *Graves v. Weld*, 5 B. & Ad. 111. And it may well be doubted whether it is ever applicable where the tenant's estate is terminated under a notice to quit for non-payment of rent.

The verdict must be set aside, and judgment entered for the plaintiff upon the report.